No. 25-4350

# United States Court of Appeals for the Ninth Circuit

SELINA KEENE; MELODY FOUNTILA,

*Plaintiffs-Appellants,*

– and –

MARK MCCLURE, APRIL MONEGAS, DAVID GOZUM, CHARLOTTE R SANDERS, THADDEUS SALEEM SHAHEED, JESSE MURILLO, RICARDO TREJO, PHILIPPE J CABRAL, DENISE ANGELINA DEBRUNNER, GREGORY EDWARD LATUS, PHILIP CHARLES HELMER, GERALD BURTON NEWBECK, JOHN LEONG, JONATHAN SHIROI TONG, ALICIA ANN WORTHINGTON, MIGUEL GONZALEZ, JOSEPH JOHN PORTA,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 4:22-CV-01587-JSW, JEFFREY S. WHITE, DISTRICT JUDGE

## BRIEF FOR PLAINTIFFS-APPELLANTS

RUSSELL M. DAVIS
LAW OFFICES OF RUSSELL M. DAVIS
29 Lakewood Avenue
San Francisco, California 94127
(415) 310-6575
loanhound@sbcglobal.net

KEVIN T. SNIDER
PACIFIC JUSTICE INSTITUTE
9851 Horn Road, Suite 115
Sacramento, California 95827
(916) 857-6900
ksnider@pji.org

*Attorneys for Plaintiffs-Appellants Selina Keene and Melody Fountila*

COUNSEL PRESS (800) 4-APPEAL • (714992)

ROGER CORMIER MORSE, RUBEN ANTONIO AGUIRRE, RANDALL M. SOOHOO, JOHN PAYTON QUINLAN, ANTONIO LANDI, ANTHONY SRINIVAS, JOSE GUARDADO, MELISSA BORZONI, ANDREW MALONEY, PENNI EIGSTER, TARA AMADO, DANIELLE BOLOGNA, SARAH BADR, KIERA NOELLE O'SHEA, MARILYN TAYLOR, SUSAN RUTH DOWNS, ROBERT SETH GELLER, NOVIA CHANDRA-MADEJSKI, RUNJOHNYA BURGESS, KATRINA ANN MEIER, DEREK WRAY, WILLIAM DANIEL BRENNAN, EUGENIA MARIE CASTEEL, HECTOR MANUEL RODRIGUEZ, NORMA ANNE SEPULVEDA, HECTOR RODRIGUEZ, CHRISTOPHER JOSEPH KROL, MICHAEL JOHN BOUVIER, VALERIO JOSIF, DORIS NAUER, VIVIAN HYUN, ALDEN FRANCISCO BELLO, YOHEI KAKUDA, HEATHER SUSAN TYKS, VINCE BRYANT-TEASDALE, OLIVER SAMPSON HUGHES, JOHANNA JOSEPHA COBLE, JERRY WAYNE SCHULZE, ZHANGRUI NIE, MARCOS PALACIO, GENTA YOSHIKAWA, KENT NISHIMURA, SIMON CAN HUI YEP, CHRISTOPHER SMITH, GLEN RYAN IDETA, MATTHEW VINCENT JUAN, MICHAEL PATRICK BOURNE, DERELL RUTHERFORD, SUZANNE BORG, DENISE AREVALO, MEGAN BOYLE, ELIZABETH NG, SASA GALUEGA, PRISCILLA SAU LENH, ANDREA SALFITI, ERIC M. PRADO, PAUL GABRIEL JACOWITZ, JEFFREY STEVEN MILLER, RACHID AMGHAR, MICHAEL GLISSON, JR., LEROY L. VANCE, KEVIN ZAPANTA CONTRERAS, JOSEPH STEPHEN JACOWITZ, NATHAN SABLAN, DICKMAR NOVA RODAS, VICKI LYNN SOLLS DAVIS, MARIA MARCELA HODGERS, JOAQUIN VALLE, ATTILA MICHAEL FOTI, KEVIN BRESTON, ALEXANDER LAVROV, LENARD MORRIS, REGINALD BERNARD SNELGRO, ROBERT T. KRUGER, LUSIANA BARAJAS, NICOLE BOWMAN, ABBY MARA THRASHER, MONICA LISSETTE GUTIERREZ, ORCHID ZOE SOH, RONALD MICHAEL TOLENTINO, JESSICA LYNN JOHNSON, CORA HERMOSO, MEAGEN CAROLYN CLENDENEN, KARLYNE MICHELLE KONCZAL, LEONIDAS ROSALES ESCALANTE, JOSEPH JOHN CASTEEL, JUAN PABLO PONCIA, JOHN JOSEPH MULLEN, KAITLYN MICHELLE VALENCIA, OWEN GLEN BRANTLEY, NUBIA VARGAS, KRISTIN C. LAVELLE, DHEYANIRA E. CALAHORRANO, MEI MEI ZHU, KEVIN RUSSELL GUSTAFSON, MICHAEL ANTHONY SORINI, MARTIN JOSEPH WALSH, PATRICK GERARD DALY, REFUGIO J. GARCIA, RANDALL RAY GERHART, PATRICK FRANCIS MULLEN, TINA LOUISE SANCHEZ, WALTER SANTO VARO, SCOTT PEPITO, JAMES R. SUTHERLIN, RICHARD DAVID FIELDS, CHASE RODRIGUEZ, MICHAEL ROYCE, BHANU VIKRAM,

*Plaintiffs,*

– v. –

CITY AND COUNTY OF SAN FRANCISCO,

*Defendant-Appellee,*

– and –

LONDON BREED, CAROL ISEN, SAN FRANCISCO PUBLIC LIBRARY, MICHAEL LAMBERT, SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH, LAWRENCE P. LINDISCH,

*Defendants.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .... iii

INTRODUCTION .... 1

STATEMENT OF JURISDICTION .... 1

STATUTORY AUTHORITIES .... 2

ISSUES PRESENTED FOR REVIEW .... 2

STATEMENT OF THE CASE .... 3

STATEMENT OF THE FACTS .... 5

STANDARD OF REVIEW .... 6

LEGAL STANDARD FOR A PRELIMINARY INJUNCTION .... 7

SUMMARY OF THE ARGUMENT .... 8

ARGUMENT .... 9

I. The district court was ordered to grant the Plaintiffs' Motion for Preliminary Injunction, the purpose of which was to preserve the "status quo ante litem." In order to preserve the status quo, Keene and Fountila must be restored to the last uncontested status which preceded the instant controversy, and all that entails. Simple logic requires back pay upon reinstatement .... 9

II. The district court characterized back pay as damages; however, back pay is an equitable remedy under Title VII and is restitution, not damages .... 10

III. The historic purpose of equity is to secure complete justice. Securing complete justice is the purpose of Title VII .... 11

A. Equity, justice, and Title VII .... 11

B. Backpay from the date of unlawful discharge is required........ 12

C. Defendant discriminated against the Plaintiffs by failing to provide an accommodation for their religious beliefs. They are therefore liable for back pay .................................... 17

D. Although the court ordered reinstatement, the Defendant has interpreted that to mean rehiring....................................... 18

IV. Title VII grants courts the authority to award pre-judgment interest and back-pay "gross ups." Plaintiffs are entitled to both . 18

V. Back pay is also available under California law ........................... 21

VI. The prayer in the complaint and the proposed order re: motion for preliminary injunction both invoke the court's equitable power to fashion a just remedy. The proposed order attached to the original motion expressly asked for back pay ..................... 22

A. The Plaintiffs asked for equitable relief and back pay............. 22

B. Even if not asked for, the court, sitting in equity, has a duty to order equitable relief even if it is not asked for .................. 23

VII. The district court abused its discretion by granting an administrative motion to strike..................................................... 23

CONCLUSION ........................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Albemarle Paper Co. v. Moody*,
422 U.S. 405 (1975) ........ *passim*

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ........ 6

*Anderson v. General Dynamics Convair Aerospace Div.*,
589 F.2d 397 (9th Cir. 1978) ........ 14

*Bachowski v. Usery*,
545 F.2d 363 (3d Cir. 1976) ........ 2

*California v. Opuku-Boateng*,
520 U.S. 1228 (1997) ........ 15

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
494 U.S. 558 (1990) ........ 11

*Comm'r v. Schleier*,
515 U.S. 323 (1995) ........ 20

*Currieri v. City of Roseville*,
50 Cal. App. 3d 499 (Cal. Ct. App. 1975) ........ 21

*Curtis v. Loether*,
415 U.S. 189 (1974) ........ 11

*EEOC v. Gen. Tel. Co. of the Nw.*,
599 F.2d 322 (9th Cir. 1979) ........ 19

*EEOC v. Hacienda Hotel*,
881 F.2d 1504 (9th Cir. 1989) ........ 12

*EEOC v. N. Star Hosp., Inc.*,
777 F.3d 898 (7th Cir. 2015) ........ 21

*Eshelman v. Agere Sys., Inc.*,
554 F.3d 426 (3d Cir. 2009) .................................................................... 20

*Franks v. Bowman Transp. Co.*,
424 U.S. 747 (1976)................................................................... 15, 17, 19

*Gilder v. PGA Tour, Inc.*,
936 F.2d 417 (9th Cir. 1991) ...................................................................... 7

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000) ..................................................................... 8

*Howe v. City of Akron*,
801 F.3d 718 (2015) ................................................................................... 10

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977)................................................................................... 19

*Johnson v. Spencer Press of Maine, Inc.*,
364 F.3d 368 (1st Cir. 2004) ..................................................................... 13

*Keene v. CCSF*,
2023 U.S. App. LEXIS 11807 (9th Cir. 2023)................................... 5, 6, 8

*Keene v. CCSF*,
2025 U.S. App. LEXIS 2105 (9th Cir. Jan. 30, 2025) ............................... 6

*Kraszewski v. State Farm Gen. Ins. Co.*,
912 F.2d 1182 (9th Cir. 1990) ............................................................ 19, 20

*Lands Council v. McNair*,
537 F.3d 981 (9th Cir. 2008)................................................................... 6, 7

*Loeffler v. Frank*,
486 U.S. 549 (1988)................................................................................... 20

*Lorillard, Div. of Loew's Theatres, Inc. v. Pons*,
434 U.S. 575 (1978).................................................................................... 11

*McKennon v. Nashville Banner Publ. Co.*,
513 U.S. 352 (1995) ........ 15

*Opuku-Boateng v. California*,
95 F.3d 1461 (9th Cir. 1996) ........ 15

*Reeb v. Ohio Dep't of Rehabilitation & Corr.*,
435 F.3d 639 (6th Cir. 2006) ........ 10

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) ........ 18

*Robinson v. Lorillard Corp.*,
444 F.2d 791 (4th Cir. 1971) ........ 11, 23

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
749 F.2d 1451 (10th Cir. 1984) ........ 21

*Sierra On-line, Inc. v. Phoenix Software, Inc.*,
739 F.2d 1415 (9th Cir. 1984) ........ 7

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
316 F.2d 804 (9th Cir. 1963) ........ 8

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016) ........ 22

*Thorne v. City of El Segundo*,
802 F.2d 1131 (9th Cir. 1986) ........ 19

*Thurman v. Yellow Freight Systs., Inc.*,
90 F.3d 1160 (6th Cir. 1996) ........ 13

*Tyree v. Riley*,
783 F. Supp. 877 (D.N.J. 1992) ........ 11

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) ........ 7

**Constitutions, Statutes, and Rules**

U.S. Const. art. III ........................................................................ 2

26 U.S.C. § 104(a)(2) ........................................................................ 20

28 U.S.C. § 1292 ........................................................................ 1

28 U.S.C. § 1331 ........................................................................ 1

28 U.S.C. § 1367 ........................................................................ 2

28 U.S.C. § 1391(b) ........................................................................ 2

28 U.S.C. § 2201 ........................................................................ 2

28 U.S.C. § 2202 ........................................................................ 2

42 U.S.C. § 1981 ........................................................................ 13

42 U.S.C. § 2000e et seq. (Title VII) .................................................. *passim*

42 U.S.C. § 2000e(j) ........................................................................ 14

42 U.S.C. § 2000e-2(a) ........................................................................ 14

42 U.S.C. § 2000e-5 ........................................................................ 20

42 U.S.C. § 2000e-5(f)(1) ........................................................................ 12

42 U.S.C. § 2000e-5(g) ........................................................................ 16, 17

42 U.S.C. § 2000e-5(g)(1) ........................................................................ 19

Cal. Civ. Code § 3333 ........................................................................ 21

Fed. R. Civ. Proc., Rule 12(f) .................................................. *passim*

Fed. R. Civ. Proc., Rule 57 ........................................................................ 2

Fed. R. Civ. Proc., Rule 65 ........................................................................ 2

Local Rule 7-11 ........................................................................ 3, 5, 6, 9, 24

Ninth Circuit Rule 28-2.2 ........................................................................ 1

**Other Authorities**

Black's Law Dictionary 166 (10th ed. 2014)................................................ 10

Equal Employment Opportunity Act of 1972—Conference Report,
118 Cong. Rec. 7166 (1972) ........................................................................ 16

Thomas R. Ireland, Tax Consequences of Lump Sum Awards in
Wrongful Termination Cases (2009)........................................................ 21

## INTRODUCTION

After the second appeal in this matter, the Ninth Circuit ordered the district court to reinstate the Plaintiffs to their former positions with the Defendant. In doing so, the Ninth Circuit ruled that the purpose of a preliminary injunction was to keep the status quo "ante litem." The district court ordered reinstatement; however, it denied reinstatement "ante litem," i.e., reinstatement with back pay, pension service credits, cost-of-living adjustments, vacation and sick time lost, interest on the back pay, and full seniority as required by the Court's order. The district court's denial has made nugatory this Court's order and the very purpose of the Plaintiffs' preliminary injunction. The district court also abused its discretion by granting an administrative motion to strike Plaintiffs' expert testimony concerning calculations even though it had expressly ordered those calculations. The grant of Defendant's motion was done in express derogation of Fed. R. Civ. Proc., Rule 12(f). This third appeal follows.

## STATEMENT OF JURISDICTION

Pursuant to Ninth Circuit Rule 28-2.2, the following is the basis of subject matter and appellate jurisdiction. The U.S. District Court for the Northern District of California had jurisdiction and venue over this action pursuant to 28 U.S.C. §§ 1292 and 1331 because the Appellee is violating Appellants' civil rights. Appellants' claims for declaratory and injunctive relief are authorized by 28 U.S.C.

§§ 2201-2202, and Fed. R. Civ. Proc., Rule 57 and 65. Supplemental jurisdiction of the district court was invoked pursuant to 28 U.S.C. § 1367 over the state law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the U.S. Constitution. This Court has the authority to award Appellants' attorneys' fees and costs associated with this action pursuant to federal statute and other applicable laws. Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b), because the relevant events have occurred and are threatened to occur in this jurisdictional district and division.

The purpose of this interlocutory appeal is twofold: to avoid inflicting more irreparable harm upon the Appellants and to avoid unnecessarily prolonging litigation. *Bachowski v. Usery*, 545 F.2d 363 (3d Cir. 1976).

## STATUTORY AUTHORITIES

All relevant statutory, constitutional, and regulatory authorities appear in the Addendum to this Brief.

## ISSUES PRESENTED FOR REVIEW

The primary issues for appeal are:

1. Whether common sense and logic require that reinstatement include back pay, additional pension service credits, any cost-of-living adjustments, vacation and sick time lost, interest on the back pay, full seniority and tax "gross ups";

2. Whether back pay under Title VII is considered restitution or damages, and whether equity jurisprudence under Title VII requires back pay, additional pension service credits, any cost-of-living adjustments, vacation and sick time lost, interest on the back pay, full seniority and tax "gross ups";

3. Whether under California law, reinstatement requires back pay, etc.; and

4. Whether administrative motions to strike are in direct conflict with Local Rule 7-11 and Fed. R. Civ. Proc. Rule 12(f).

## STATEMENT OF THE CASE

Appellants Selina Keene and Melody Fountila filed their complaint on March 14, 2022 (2-ER-262). Appellants filed a motion for preliminary injunction on May 23, 2022 (2-ER-144), mandating that Appellee, City and County of San Francisco (CCSF), accommodate them by requiring them to wear masks, test often, and wear PPE, or by mandating that CCSF allow Appellants to telecommute to work just as they did during the height of the pandemic. The district court denied the motion for preliminary injunction on September 23, 2022 (2-ER-137), and the first appeal in this matter followed (2-ER-135). This Court reversed and remanded the case for further consideration and filed its memorandum on May 15, 2023 (2-ER-127), and its mandate on June 6, 2023 (2-ER-125). A motion to enter an order pursuant to that mandate was filed on June 23, 2023. A Notice Regarding Submitted Matters was filed on January 16, 2024. Plaintiffs then filed a Motion for

an Expedited Status Conference on February 14, 2024. On February 21, 2024, after an eight (8) month delay, the district court entered an order removing the status conference from the calendar, denying the motion to enter an order, thereby again denying the Plaintiffs' Motion for Preliminary Injunction (2-ER-118). After another appeal, this Court reversed again. It ordered the district court to enter an order reinstating the Plaintiffs (2-ER-104–114). In doing so, this Court explicitly stated that the purpose of a preliminary injunction was to maintain the status quo "ante litem." The Plaintiffs again moved the district court to enter an order (2-ER-94). That motion requested reinstatement with backpay, additional pension service credits, any cost-of-living adjustments the Plaintiffs were entitled to, vacation and sick time lost, interest on the back pay, and full seniority. The district court entered an order requiring reinstatement and ordered additional briefing on the issues of the specific "damages" that the Plaintiffs were requesting, how they were calculated, and binding precedent in support (2-ER-84). Plaintiffs provided extensive briefing on the issues (2-ER-69–79) and contested the characterization of back pay as damages. Plaintiffs informed the district court that they needed additional time to provide specific calculations because Plaintiffs' experts were unavailable to respond within the time frame given by the court (2-ER-78:14-15). However, by the time the Plaintiffs' Reply was due, Plaintiffs' experts did respond with specific calculations; those calculations were attached to the Declaration of

Russell Davis in Reply (2-ER-34). Defendants opposed and also filed an administrative motion to strike the expert's statement of damages. The district court denied Plaintiffs' request for back pay, etc. and granted the Defendant's motion to strike in express derogation of Local Rule 7-11 and Fed. R. Civ. Proc., Rule 12(f) (1-ER-4). This appeal followed (3-ER-288).

## STATEMENT OF THE FACTS

On June 23, 2021, CCSF demanded that all 35,000 of its employees be vaccinated against COVID-19 or risk losing their jobs. The requirement would take effect once a COVID-19 vaccine received full authorization from the Food and Drug Administration. Thereafter, in a mandate issued by the Defendant, all CCSF workers were to be vaccinated by November 1, 2021.

Appellants Selina Keene and Melody Fountila are Christians who believe in the sanctity of life. *Keene v. CCSF*, 2023 U.S. App. LEXIS 11807 (9th Cir. 2023) (*Keene I*). Appellants are opposed to taking the mRNA vaccines because such vaccines were derived from stem cells taken from aborted fetuses. *Id*. at fn. 1. This is in direct contradiction to Keene's and Fountila's Christian beliefs. Based on those sincerely held Christian religious beliefs, Keene and Fountila requested religious accommodations to the vaccine mandates. After responding to CCSF's questionnaires regarding their religious beliefs, both Appellants' requests were denied without explanation. Both Appellants also recovered from COVID-19 and

asked for medical exemptions based on their naturally acquired immunity. Those requests were also denied.

Both Keene and Fountila were working remotely at the height of the pandemic and were denied an accommodation that would have allowed them to continue working remotely. They brought an action to vindicate their civil rights and moved for a preliminary injunction, which was denied and then reversed on appeal. *Keene I*. The district court again denied their motion (2-ER-118), and this Court reversed again. *Keene v. CCSF*, 2025 U.S. App. LEXIS 2105 (9th Cir. Jan. 30, 2025) (2-ER-104–114). After moving the district court to enter an order pursuant to the Ninth Circuit's Memorandum, the district court ordered reinstatement but denied Plaintiffs' motion for reinstatement "ante litem," thereby effectively denying the motion for preliminary injunction and necessitating this third appeal (1-ER-4). It also granted an administrative motion to strike in express derogation of Local Rule 7-11 and Fed. R. Civ. Proc., Rule 12(f).

## STANDARD OF REVIEW

A district court's denial of a preliminary injunction is reviewed for abuse of discretion. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) (citing *Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008) (en banc)). An abuse of discretion will be found if the district court based its decision "on an erroneous legal standard or clearly erroneous finding of fact." *Lands Council*, 537

F.3d at 986. "We review conclusions of law de novo and findings of fact for clear error." *Id*. at 986-87. We will not reverse the district court where it "got the law right," even if we "would have arrived at a different result," so long as the district court did not clearly err in its factual determinations. *Id*. at 987 (internal citations omitted). As shown below, the district court has once again abused its discretion.

**LEGAL STANDARD FOR A PRELIMINARY INJUNCTION**

The purpose of preliminary injunctive relief is to preserve the status quo or to prevent irreparable injury pending the resolution of the underlying claim. *Sierra On-line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1422 (9th Cir. 1984).

The test for whether a preliminary injunction is appropriate requires determining (1) whether the plaintiff is likely to succeed on the merits; (2) whether the plaintiff is likely to suffer irreparable harm without the injunction; (3) whether the balance of equities and hardships is in the plaintiff's favor; and (4) whether an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7 (2008).

In the Ninth Circuit, an alternative test has been articulated. Under that test, the moving party must demonstrate either (1) probable success on the merits and the possibility of irreparable harm; or (2) the lawsuit raises serious questions and the balance of hardship tips sharply in the movant's favor. *Gilder v. PGA Tour, Inc*., 936 F.2d 417, 422 (9th Cir. 1991).

This Court found that Keene and Fountila met their burden for preliminary relief. It reversed the district court's denial of the preliminary injunction and remanded with directions to grant the preliminary injunctive relief consistent with its memorandum disposition. *See*, *Keene, Id.*

## SUMMARY OF THE ARGUMENT

Reversing the district court for a second time, this Court's disposition memorandum stated the following:

> Given that the equitable purpose of a preliminary injunction is to preserve the 'status quo ante litem,' relief is warranted here. *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) (noting that "**status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy'** (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963))).

2-ER-102–114 (Emphasis added).

The last uncontested status preceding the instant controversy was the full employment of both Plaintiffs with the Defendant. Given this fact, the current "controversy" concerns what is required of the order to reinstate Plaintiffs. Keene and Fountila contend that the order for reinstatement must include back pay, additional pension service credits, any cost-of-living adjustments, vacation and sick time lost, interest on the back pay, full seniority, and tax "gross ups." As shown below, (1) simple logic requires it; (2) the nature of equitable relief requires

it; (3) this Court's order requires it; (4) Title VII requires it; and (5) California law requires it.

Additionally, even though the district court requested calculations of back pay, etc., it granted the Defendant's motion to strike the Plaintiffs' expert testimony that included the calculations it specifically ordered. This was done in express violation of Local Rule 7-11, which limits the use of administrative motions to procedural or administrative matters, not substantive legal issues or matters governed by the FRCP. Motions to strike are expressly governed by Fed. R. Civ. Proc., Rule 12(f); despite its clear violation, the court granted CCSF's motion and once again abused its discretion, thereby making it another matter for this appeal.

## ARGUMENT

### I. The district court was ordered to grant the Plaintiffs' Motion for Preliminary Injunction, the purpose of which was to preserve the "status quo ante litem." In order to preserve the status quo "ante litem," Keene and Fountila must be restored to the last uncontested status which preceded the instant controversy, and all that entails. Simple logic requires back pay upon reinstatement.

Keene and Fountila were working for CCSF prior to the filing of their lawsuit; that work was the last uncontested status prior to this litigation. Simple logic and the Mandate require that the Plaintiffs be reinstated (i.e., restored) to the same position they held more than three and one half (3.5) years ago. If Keene and Fountila had the same positions they had more than 3.5 years ago, would they not have received their salaries from that point forward? Would they not have received

their yearly cost-of-living raises? Would they not have received any bonuses due them during the last 3.5 years? Would they not have received any promotions earned during the last 3.5 years? Would they not have received an additional 3.5 years' service credit toward their pensions? Would the interest on their unpaid earnings not accrue to the benefit of the Plaintiffs? The answer to all the above questions is obviously *yes*, and for those reasons the district court needs to order the Defendant to pay the Plaintiffs' back wages and all that entails.

**II. The district court characterized back pay as damages; however, back pay is an equitable remedy under Title VII and is restitution, not damages.**

The district court characterized back pay as damages (2-ER-84:27–85:24-25). However, back pay is an equitable remedy; it is not part of the legal remedy of compensatory damages under Title VII.

Back pay and compensatory damages are different. Back pay includes "[t]he wages or salary that an employee should have received but did not because of an employer's unlawful action . . . ." Black's Law Dictionary 166 (10th ed. 2014). *Howe v. City of Akron*, 801 F.3d 718, fn. 3 (2015). "Compensatory damages may include future pecuniary losses, emotional damages, suffering, inconvenience, mental distress, hedonic losses, and other nonpecuniary losses." *Reeb v. Ohio Dep't of Rehabilitation & Corr.*, 435 F.3d 639, 646 (6th Cir. 2006). Thus, back pay is retrospective, aimed at restoration. Damages (e.g., front pay, emotional distress)

are prospective, aimed at compensating plaintiffs for matters that occurred after the incidents that gave rise to the litigation.

Back pay is equitable because it is restitutionary. *See*, *e.g.*, *Robinson v. Lorillard Corp*., 444 F.2d 791, 802 (4th Cir. 1971) ("The back pay award is not punitive in nature, but equitable—intended to restore the recipients to their rightful economic status absent the effects of the unlawful discrimination.").

> The Supreme Court has held that back pay is most accurately characterized as equitable in nature. *See*, *Terry*, 494 U.S. at 572-73 (acknowledging back pay under Title VII is generally characterized as equitable relief); *Curtis*, 415 U.S. at 197 (noting restitutionary nature of back pay); *Lorillard*, 434 U.S. at 584 (stating that under Title VII, availability of back pay is a matter of equitable discretion); *see also*, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 443 (1975).

*Tyree v. Riley*, 783 F. Supp. 877, 880 (D.N.J. 1992). "In Title VII cases the courts of appeals have characterized backpay as an integral part of an equitable remedy, a form of restitution." *Curtis*, 415 U.S. at 197.

## III. The historic purpose of equity is to secure complete justice. Securing complete justice is the purpose of Title VII.

### A. Equity, justice, and Title VII.

The historic purpose of equity is to secure complete justice. A purpose of Title VII of the Civil Rights Act of 1964 is to make persons whole for injuries suffered on account of unlawful employment discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 408 (1975). Respondents in *Albemarle* sought to enjoin practices at their workplace in violation of Title VII, 42 U.S.C. § 2000e et seq., and

later sought backpay. The major issues in *Albemarle* were the petitioner's seniority system, its program of employment testing, and backpay. The district court found that black employees had been "locked" into lower paying job classifications; however, it refused to order backpay. The appellate court reversed and remanded, ordering back pay. On certiorari, the Court held that backpay should have been denied only for reasons that would not frustrate Title VII's purposes of eradicating discrimination and making victims whole. It reversed and remanded to the district court for further findings.

**B. Backpay from the date of the unlawful discharge is required.**

In awarding backpay under Title VII, the district court is required to attempt to make victims of discrimination whole by restoring them to the position in which they would have been absent the discrimination. *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1518 (9th Cir. 1989). In *Hacienda*, the appellee EEOC brought suit against appellant pursuant to 42 U.S.C. § 2000e-5(f)(1). Five maids, who were employed by appellant, were found to have been terminated in retaliation for opposing discriminatory practices, including failing to accommodate their religious beliefs. All five maids obtained relief, including an award of back pay. This case is on all fours with the instant case: absent Defendant's discrimination, Plaintiffs would have continued working for Defendant, thereby getting paid, receiving bonuses and cost-of-living adjustments, getting pension service credits, etc. In

other words, an award of back pay would simply restore the Plaintiffs to what they would have had absent the discrimination.

The U.S. Supreme Court laid out the basic standards for awarding back pay in *Albemarle*. That opinion clarified that in cases of unlawful discrimination, "back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id*. at 421. Despite its equitable nature, **back pay is therefore "a presumptive entitlement of a plaintiff who successfully prosecutes an employment discrimination case**." *Johnson v. Spencer Press of Maine, Inc*., 364 F.3d 368, 379 (1st Cir. 2004). "An award of back pay compensates plaintiffs for lost wages and benefits." *Id*. In *Johnson*, the court determined that a plaintiff was entitled to back pay due to religious discrimination, even though it found that the plaintiff was not entitled to back pay after being fired from a subsequent job. *See also*, *Thurman v. Yellow Freight Systs., Inc.*, 90 F.3d 1160, 1171 (6th Cir. 1996). In *Thurman*, the plaintiff, a former employee of Yellow Freight, brought an action against his employer for discrimination in violation of Title VII and 42 U.S.C. § 1981. The district court found that defendant had discriminated against plaintiff in failing to hire him as a full-time employee and awarded plaintiff back pay, costs, and attorney's fees. The Sixth Circuit affirmed and also remanded for recalculation

of the back pay, finding that reduction in back pay for collateral source income was not appropriate and also finding that the plaintiff was entitled to prejudgment interest.

In *Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 399 (9th Cir. 1978), a former employee of General Dynamics brought a Title VII action against General Dynamics and the Union, claiming that he had been discharged in violation of the religious discrimination provisions of Title VII (42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e(j)), and seeking an injunction, back pay, attorney's fees, etc. The district court ruled that the employer had established an undue hardship defense; however, the Ninth Circuit found that neither defendant had established an undue hardship defense and reversed and remanded. After remand, the defendants appealed to the Supreme Court, and certiorari was denied. Once again, the district court ruled against the Plaintiff, claiming Title VII violated the Establishment Clause of the U.S. Constitution. The Ninth Circuit overruled and the defendants again appealed to the Supreme Court, and certiorari was denied again. On remand the parties stipulated to certain facts and the court entered judgment for the plaintiff, granting him reinstatement with full seniority, awarding him back pay and attorney's fees. *See*, Plaintiffs' second request for judicial notice, Russell Davis Declaration, Exhibit 1. *Anderson* is similar to the instant case.

In *Opuku-Boateng v. California*, 95 F.3d 1461 (9th Cir. 1996), a religious failure-to-hire/accommodate case under Title VII, a Sabbatarian sought back pay among other make-whole remedies. The district court ruled against Boateng, claiming that the defendant had established an undue hardship defense. The Ninth Circuit overruled. The defendant appealed to the Supreme Court; however, certiorari was denied. *California v. Opuku-Boateng*, 520 U.S. 1228 (1997). On remand the parties entered a consent judgment which included back pay for Boateng. *See*, Docket No. 153, Case No. 87-755, attached to Plaintiffs' first request for judicial notice.

The object of back pay is to restore the employee to the position they would have been in absent the discrimination. *Franks v. Bowman Transp. Co*., 424 U.S. 747, 764 (1976). *Franks* was a failure-to-hire case brought as a class action pursuant to Title VII. Ultimately, the Supreme Court ruled that the plaintiffs were entitled to seniority as of the date of their employment application. Only by doing so would the plaintiffs be restored to the position they would have absent the discrimination. The Plaintiffs-Appellants herein are seeking the same: to be restored to the same position they had absent the discrimination. The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge. *McKennon v. Nashville Banner Publ. Co*., 513 U.S. 352, 362 (1995).

*Albemarle*, consistently with the congressional plan, held that one of the central purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle*, 422 U.S. at 418. To effectuate this "make whole" objective, Congress in § 706(g) (of 42 U.S.C. § 2000e-5(g)) vested broad equitable discretion in the federal courts to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate." The legislative history supporting the 1972 amendments of § 706(g) of Title VII affirms the breadth of this discretion:

> The provisions of [§ 706(g)] are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. . . . [T]he Act is intended to make the victims of unlawful employment discrimination whole, and . . . the attainment of this objective . . . requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.

Section-by-Section Analysis of H.R. 1746, accompanying the Equal Employment Opportunity Act of 1972—Conference Report, 118 Cong. Rec. 7166, 7168 (1972) (Provided by the Librarian of Congress and attached to Plaintiffs' request for judicial notice for the Court's convenience. The Court is respectfully directed to page 7168, middle column.). This is emphatic confirmation that federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, making whole insofar as possible the victims of

religious and racial discrimination in hiring. It can hardly be questioned that ordinarily such relief will be necessary to achieve the "make-whole" purposes of the Act. *Franks*, 424 U.S. at 763-66.

**C. Defendant discriminated against the Plaintiffs by failing to provide an accommodation for their religious beliefs. They are therefore liable for back pay.**

Employers who discriminate, as the Defendant did, and as the Ninth Circuit found (2-ER-107–114), are liable under Title VII for back pay in the amount of the differential between the wages received and the wages which would have been paid absent the discrimination. U.S.C. § 2000e-5(g). Prevailing employees are entitled to relief under Title VII so long as they do not receive overlapping relief for the same wrong. Keene and Fountila are the prevailing parties on their motion for preliminary injunction. Keene and Fountila were forced to retire to avoid termination. They mitigated their damages by taking their pensions. The amount received from their pensions will reduce the amount of back pay; however, back pay must be paid in order to restore, or make whole, the Plaintiffs to the same position they had "ante litem." Once Keene and Fountila are restored to their prior positions ante litem, the balance of their entitlements flows naturally, i.e., cost-of-living adjustments, any increases in benefits, service credit towards their pensions, etc.

### D. Although the court ordered reinstatement, the Defendant has interpreted that to mean rehiring.

Lodged with the district court and attached to a motion to supplement or augment the record (*see*, Russell Davis Declaration, Exhibit 1), is the putative reinstatement letter that CCSF sent to Keene and Fountila. It is clear from the letter that CCSF considers the reinstatement order to mean it needs to rehire Keene and Fountila—if not, why have them submit to fingerprinting and reorientation classes? Plaintiffs were to be reinstated "ante litem," in other words, as if they had not been fired in the first place. If they had not been fired, Keene and Fountila certainly would not be required to submit to fingerprinting. It is also doubtful that reorientation classes would be necessary. CCSF, in its brief in opposition to Plaintiffs' motion to enter an order, makes it clear that it believes the Mandate to mean rehiring and not reinstatement (2-ER-93:9-10). Even at the level of common English language the Defendant seems dedicated to continuing the irreparable harm inflicted on the Plaintiffs.

## IV. Title VII grants courts the authority to award pre-judgment interest and back-pay "gross ups." Plaintiffs are entitled to both.

Title VII exists in large part "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle,* 422 U.S. at 418; *accord*, *e.g.*, *Rivera v. NIBCO, Inc*., 364 F.3d 1057, 1069 (9th Cir. 2004) ("Title VII's central statutory purpose is eradicating discrimination throughout the

economy and making persons whole for injuries suffered through past discrimination." (internal quotation marks omitted)); *Kraszewski v. State Farm Gen. Ins. Co.*, 912 F.2d 1182, 1184-86 (9th Cir. 1990) (endorsing granting of equitable relief under Title VII where it is "necessary to put the victim in the place he would have been—to make him whole"); *Thorne v. City of El Segundo*, 802 F.2d 1131, 1133-34 (9th Cir. 1986) (to the same effect). And Title VII provides courts with considerable equitable discretion to ensure adequate compensation. *See*, 42 U.S.C. § 2000e-5(g)(1) (authorizing "any other equitable relief as the court deems appropriate"); *see also*, *e.g.*, *Albemarle*, 422 U.S. at 418-21; *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364-65 (1977) (confirming that Title VII "vest[s] broad equitable powers in . . . courts"); *Franks*, 424 U.S. at 763-64 (same); *EEOC v. Gen. Tel. Co. of the Nw.*, 599 F.2d 322, 334-35 (9th Cir. 1979) ("Congress armed the courts with full equitable powers in Title VII cases. . . . The courts will be alert to adjust their remedies so as to grant the necessary relief.").

The Court in *Albemarle* reiterated that "[i]t is the historic purpose of equity to secure complete justice," and that "[i]n the context of a claim brought under a federal statute intended to combat discrimination, the phrase 'complete justice' has a clear meaning: **'the [district] court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future**.'" *Albemarle*,

422 U.S. at 418 (emphasis added); *see also*, *Kraszewski*, 912 F.2d at 1185-86. Back pay is one manifestation of this principle (s*ee*, *Loeffler v. Frank*, 486 U.S. 549, 558 (1988)), **as is prejudgment interest on back-pay awards**. *See*, *id*. at 557 (recognizing that the courts of appeals unanimously hold "that Title VII authorizes prejudgment interest as part of [back-pay awards]").

Unfortunately for successful Title VII plaintiffs, back-pay awards are taxable. *See*, *Comm'r v. Schleier*, 515 U.S. 323, 327 (1995) (superseded by statute excluding emotional distress damages); *see also*, 26 U.S.C. § 104(a)(2) (restricting income-tax exclusion for personal-injury awards to those "received . . . on account of personal *physical* injuries or *physical* sickness"). A lump-sum award will sometimes push a plaintiff into a higher tax bracket than he would have occupied had he received his pay incrementally over several years. Plaintiffs claim that very side effect here. They argue that the taxman's expanded cut effectively denies them what Title VII promises—full relief that puts them where they would be had the unlawful employment discrimination never occurred. The Third, Seventh, and Tenth Circuits have all held that district courts have the discretion to "gross up" an award to account for income tax consequences. *See*, *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 440-43 (3d Cir. 2009) ("[A] district court may, pursuant to its broad equitable powers granted by [42 U.S.C. § 2000e-5], award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay

award may create.”); *EEOC v. N. Star Hosp., Inc.*, 777 F.3d 898, 903-04 (7th Cir. 2015) (agreeing with Third and Tenth Circuits that “without the tax-component award, [the plaintiff] will not be made whole, a result that offends Title VII’s remedial scheme”); *Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1456-57 (10th Cir. 1984) (upholding a tax gross up because under Title VII, “the trial court has wide discretion in fashioning remedies to make victims of discrimination whole”); *see also*, Thomas R. Ireland, Tax Consequences of Lump Sum Awards in Wrongful Termination Cases (2009) (attached to Plaintiffs’ request for judicial notice for the Court’s convenience).

**V. Back pay is also available under California law.**

Under California law, “[a] wrongfully discharged employee . . . is entitled to damages [that] tend to make him whole” and that “represent just compensation for the loss . . . sustained by the plaintiff.” *Teutscher v. Woodson*, 835 F.3d 936, 945-946 (9th Cir. 2016), citing to *Currieri v. City of Roseville*, 50 Cal. App. 3d 499, 508 (Cal. Ct. App. 1975) and Cal. Civ. Code § 3333 (“For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.”). One key component of economic loss is the income that the employee would have earned had he not been wrongfully discharged.

## VI. The prayer in the complaint and the proposed order re: motion for preliminary injunction both invoke the court's equitable power to fashion a just remedy. The proposed order attached to the original motion expressly asked for back pay.

### A. The Plaintiffs asked for equitable relief and back pay.

In its order the district court states that Plaintiffs did not ask for back pay in their motion for preliminary injunction (1-ER-4). However, the prayer for relief in the complaint states in part: "Plaintiffs request such other and further relief as the Court may deem appropriate." 2-ER-273:15. This part of the prayer for relief therefore invokes the Court's equitable jurisdiction to fashion an appropriate remedy.

Further, as stated in the Court's order, the proposed order on the original motion for preliminary injunction expressly asks for back pay. It states in part as follows:

> For good cause shown, the Court orders as follows: That CCSF accommodate Plaintiffs by rehiring them, **with back pay**, and allowing them to telecommute to work or mandating that Plaintiffs wear PPE at all times while working for CCSF and to test for COVID-19 at least twice per week (or every day if deemed necessary by CCSF).

2-ER-261:9 (Emphasis added).

### B. Even if not asked for, the court, sitting in equity, has a duty to order equitable relief even if it is not asked for.

In equity the Chancellor has a duty to do what is right and just. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, **even if the party has not demanded such relief in his pleadings**. This provision has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the basis of the facts proved. The pleadings serve only as a rough guide to the nature of the case. *Robinson v. Lorillard Corp*., 444 F.2d at 802-803 (emphasis added). So, assuming, arguendo, that Plaintiffs did not ask for back pay, it is clear that the court, sitting in equity, has a duty to grant that relief because it is appropriate in this case.

The invocation of the court's power in equity to fashion a just remedy in the complaint and the express request for back pay in the proposed order were sufficient to demand the relief requested. Even if deemed not sufficient, the court's independent duty to do what is right requires it to order back pay in this matter.

## VII. The district court abused its discretion by granting an administrative motion to strike.

In its order the district court wanted additional briefing re: calculations of back pay, etc. Due to expert witness time constraints (2-ER-11:1-2, 12-13, ¶ 2; 2-ER-78:21-22), those calculations were provided to the court in Plaintiffs' reply

brief (2-ER-37). CCSF objected and moved, via an administrative motion, to strike the expert's calculations. The district court granted the motion, in express derogation of Local Rule 7-11 and Fed. R. Civ. Proc., Rule 12(f).

Local Rule 7-11, Motion for Administrative Relief, states the following:

> The Court recognizes that during the course of case proceedings a party may require a Court order with respect to miscellaneous administrative matters, not **otherwise governed** by a federal statute, **Federal Rule**, local rule, or standing order of the assigned Judge. These motions would include matters such as motions to exceed otherwise applicable page limitations or motions to file documents under seal, for example. (Emphasis added).

In other words, an administrative motion addresses procedural or administrative matters, not substantive legal issues of the case or matters governed by the FRCP. It concerns housekeeping matters, not substantive matters. Fed. R. Civ. Proc., Rule 12(f) states as follows:

> (f) MOTION TO STRIKE. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Because a motion to strike is governed by Fed. R. Civ. Proc., Rule 12(f), the Defendant cannot move to strike via an administrative motion. Therefore, the district court abused its discretion by granting the motion to strike.

Additionally, as shown by Exhibit 2 to the Davis declaration in support of Plaintiffs' motion to supplement the record, Defendant had every opportunity to

provide its own calculations but chose not to. CCSF subpoenaed its own Human Resources Department for the Plaintiffs' pay records and could have calculated back pay owed very easily. Could it be that its own records show that even more money is owed to the Plaintiffs than the Plaintiffs have shown?

## CONCLUSION

A plaintiff who is successful in obtaining an injunction under Title VII should ordinarily be awarded back pay unless special circumstances would render such an award unjust. *Albemarle*, 422 U.S at 412. There are no such special circumstances herein.

Keene and Fountila were twice successful on their motion for a preliminary injunction and are now asking, for the third time, for the equitable relief denied by the district court. Plaintiffs are entitled to back pay, prejudgment interest, tax "gross ups," any cost-of-living adjustments or increases to benefits they would have received if not discriminated against, additional years of service credit for their pensions, and prejudgment interest. Plaintiffs also request that this Court restore the stricken expert calculations that were specifically requested by the district court. Whatever the outcome herein is, and in an effort to avoid further appearances herein, Plaintiffs request a detailed order to the district court.

Respectfully submitted this 3rd day of October 2025,

/s/ Russell Davis
Russell Davis

PACIFIC JUSTICE INSTITUTE

*Attorney for Plaintiffs-Appellants*

**STATEMENT OF RELATED CASES**

The undersigned attorney states the following: I am unaware of any related cases currently pending in this Court.

/s/ Russell Davis
Russell Davis

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to FRCP 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14-point, is composed in Times New Roman font, and contains no more than 14,000 words. According to Microsoft Word's "Statistics" this document contains: 6,062 words.

/s/ Russell Davis
Russell Davis

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 3, 2025

/s/ Russell Davis
Russell Davis

# ADDENDUM

# ADDENDUM

## TABLE OF CONTENTS

U.S. Const. art. III ........ ADD-1

26 U.S.C. § 104(a)(2) ........ ADD-2

28 U.S.C. § 1292 ........ ADD-2

28 U.S.C. § 1331 ........ ADD-4

28 U.S.C. § 1367 ........ ADD-4

28 U.S.C. § 1391(b) ........ ADD-5

28 U.S.C. § 2201 ........ ADD-6

28 U.S.C. § 2202 ........ ADD-6

42 U.S.C. § 1981 ........ ADD-7

42 U.S.C. § 2000e(j) ........ ADD-7

42 U.S.C. § 2000e-2(a) ........ ADD-7

42 U.S.C. § 2000e-5 ........ ADD-8

Cal. Civ. Code § 3333 ........ ADD-15

Fed. R. Civ. Proc., Rule 12(f) ........ ADD-15

Fed. R. Civ. Proc., Rule 57 ........ ADD-15

Fed. R. Civ. Proc., Rule 65 ........ ADD-16

Local Rule 7-11 ........ ADD-17

Ninth Circuit Rule 28-2.2 ........ ADD-18

**U.S. Const. art. III**

Section 1
The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.
Section 2
The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.
In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.
The Trial of all Crimes, except in Cases of Impeachment; shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.
Section 3
Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort. No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court.

The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted.

**26 U.S.C. § 104(a)(2)**

(2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

**28 U.S.C. § 1292**

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;
(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;
(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an

appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

(c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—(1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title [28 USCS § 1295]; and (2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

(d) (1) When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title [28 USCS § 256(b)], or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order. (2) When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title [28 USCS § 798(b)], or when any judge of the United States Claims Court [United States Court of Federal Claims], in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order. (3) Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Claims Court [Court of Federal Claims], as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Claims Court [Court of Federal Claims] or by the United States Court of Appeals for the Federal Circuit or a

judge of that court. (4) (A) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Claims Court [United States Court of Federal Claims] under section 1631 of this title [28 USCS § 1631]. (B) When a motion to transfer an action to the Claims Court [Court of Federal Claims] is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Claims Court [Court of Federal Claims] pursuant to the motion shall be carried out.

(e) The Supreme Court may prescribe rules, in accordance with section 2072 of this title [28 USCS § 2072], to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

**28 U.S.C. § 1331**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S.C. § 1367**

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title [28 USCS § 1332], the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332 [28 USCS § 1332].
(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.
(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

**28 U.S.C. § 1391(b)**

(b) Venue in general. A civil action may be brought in—
(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

**28 U.S.C. § 2201**

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 [26 USCS § 7428], a proceeding under section 505 or 1146 of title 11 [11 USCS § 505 or 1146], or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930 [19 USCS § 1516a(f)(9)]), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act [21 USCS §§ 355 or 360b], or section 351 of the Public Health Service Act [42 USCS § 262].

**28 U.S.C. § 2202**

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

**42 U.S.C. § 1981**

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
(c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

**42 U.S.C. § 2000e(j)**

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

**42 U.S.C. § 2000e-2(a)**

(a) Employer practices. It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect

his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**42 U.S.C. § 2000e-5**

(a) Power of Commission to prevent unlawful employment practices. The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 703 or 704 of this title [42 USCS §§ 2000e-2 or 2000e-3].
(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause. Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the

requirements of subsections (c) and (d). If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d), from the date upon which the Commission is authorized to take action with respect to the charge.
(c) State or local enforcement proceedings; notification of State or local authority; time for filing charges with Commission; commencement of proceedings. In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) [(b)] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.
(d) State or local enforcement proceedings; notification of State or local authority; time for action on charges by Commission. In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political

subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

(e) Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system.

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this title [42 USCS §§ 2000e et seq.] (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

(3)

(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title [42 USCS §§ 2000e et seq.], when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.
(B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C. 1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.
(f) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master.
(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d), the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case

involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsections (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.
(2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation, that prompt judicial action is necessary to carry out the purposes of this Act [title], the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having

jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title [42 USCS §§ 2000e et seq.]. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28 of the United States Code, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

(4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

(5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders.

(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such

affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(2)

(A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 704(a) [42 USCS § 2000e-3(a)].

(B) On a claim in which an individual proves a violation under section 703(m) [42 USCS § 2000e-2(m)] and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 703(m) § 42 USCS § 2000e-2(m)]; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

(h) Provisions of 29 USCS §§ 101 et seq. not applicable to civil actions for prevention of unlawful practices. The provisions of the Act entitled "An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes," approved March 23, 1932 (29 U. S. C. 101–115), shall not apply with respect to civil actions brought under this section.

(i) Proceedings by Commission to compel compliance with judicial orders. In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a

civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.
(j) Appeals. Any civil action brought under this section and any proceedings brought under subsection (i) shall be subject to appeal as provided in sections 1291 and 1292, title 28, United States Code.
(k) Attorney's fee, liability of Commission and United States for costs. In any action or proceeding under this title [42 USCS §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

**Cal. Civ. Code § 3333**

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

**Fed. R. Civ. P. 12(f)**

(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
(1) on its own; or
(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

**Fed. R. Civ. P. 57**

These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

**Fed. R. Civ. P. 65**

(a) Preliminary Injunction.
(1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.
(2) Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.
(b) Temporary Restraining Order.
(1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
(2) Contents; Expiration. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.
(3) Expediting the Preliminary-Injunction Hearing. If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.
(4) Motion to Dissolve. On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order.

The court must then hear and decide the motion as promptly as justice requires.
(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.
(d) Contents and Scope of Every Injunction and Restraining Order.
(1) Contents. Every order granting an injunction and every restraining order must:
(A) state the reasons why it issued;
(B) state its terms specifically; and
(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.
(2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
(A) the parties;
(B) the parties' officers, agents, servants, employees, and attorneys; and
(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).
(e) Other Laws Not Modified. These rules do not modify the following:
(1) any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee;
(2) 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader; or
(3) 28 U.S.C. § 2284, which relates to actions that must be heard and decided by a three-judge district court.
(f) Copyright Impoundment. This rule applies to copyright-impoundment proceedings.

**Northern Dist. Ct. of Cal. Local Rule 7-11**

The Court recognizes that during the course of case proceedings a party may require a Court order with respect to miscellaneous administrative matters, not otherwise governed by a federal statute, Federal Rule, local rule, or standing order of the assigned Judge.

These motions would include matters such as motions to exceed otherwise applicable page limitations or motions to file documents under seal, for example.
(a) Form and Content of Motions. A motion for an order concerning a miscellaneous administrative matter may not exceed 5 pages (not counting declarations and exhibits), must set forth specifically the action requested and the reasons supporting the motion, and must be accompanied by a proposed order and by either a stipulation under Civil L.R. 7-12 or by a declaration that explains why a stipulation could not be obtained. If the motion is manually filed, the moving party must deliver the motion and all attachments to all other parties on the same day that the motion is filed.
(b) Opposition to or Support for Motion for Administrative Relief. Any opposition to or support for a Motion for Administrative Relief may not exceed 5 pages (not counting declarations and exhibits), must set forth succinctly the reasons in opposition or support, must be accompanied by a proposed order, and must be filed no later than 4 days after the motion has been filed. The opposition or support and all attachments thereto, if manually filed, must be delivered to all other parties the same day it is manually filed.
(c) Action by the Court. Unless otherwise ordered, a Motion for Administrative Relief is deemed submitted for immediate determination without hearing on the day after the opposition is due.

**Ninth Cir. Rule 28-2.2**

In a statement preceding the statement of the case in its initial brief, each party shall demonstrate the jurisdiction of the district court or agency and of this Court by stating, in the following order:
(a) The statutory basis of subject matter jurisdiction of the district court or agency;
(b) The basis for claiming that the judgment or order appealed from is final or otherwise appealable, and the statutory basis of jurisdiction of this Court. (Rev. 12/1/09)
(c) The date of entry of the judgment or order appealed from; the date of filing of the notice of appeal or petition for review; and the statute or rule under which it is claimed the appeal is timely.

If the appellee agrees with appellant's statement of one or more of the foregoing matters, it will be sufficient for the appellee to state such agreement under an appropriate heading.